DA 14-0496

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 125N

IN THE MATTER OF

J.M., J.L.M., and J.M.M.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause Nos. DN-13-2, DN-14-2, and
DN-14-3
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

     For Appellant Father J.M. Sr.:

     Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana

     For Appellee:

     Timothy C. Fox, Montana Attorney General, Pamela P. Collins; Assistant
Attorney General; Helena, Montana

     Emily von Jentzen, Assistant Attorney General; Kalispell, Montana

Submitted on Briefs:  April 1, 2015
Decided:  May 5, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by unpublished opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.M., Sr. ("Father") appeals from the orders of the Montana Twentieth Judicial District Court, Lake County, terminating his parental rights to J.M., J.L.M., and J.M.M. We affirm.

¶3 On January 29, 2013, the Department of Public Health and Human Services ("the Department") filed a petition for emergency protective services, for adjudication as a youth in need of care, and for temporary legal custody of J.M. Father is the biological parent of J.M. Following an April 24, 2013 hearing on the petition, the District Court adjudicated J.M. a youth in need of care and granted the Department temporary legal custody of the child. The District Court approved and ordered a treatment plan for Father soon thereafter.

¶4 On July 5, 2013, J.L.M. and J.M.M. were born. Father is their biological father. After the children's birth, Father entered an agreement with the Department so that the children could live with him in his home.

¶5 On October 8, 2013, the Department filed a petition to extend temporary legal custody over J.M. On December 4, 2013, following a hearing, the District Court granted the petition. On December 9, 2013, J.M. returned to Father's home for a trial visit.

2

Following an incident on January 24, 2014, however, all of the children – J.M., J.L.M., and J.M.M. – were removed from the home, and the Department filed a petition for emergency protective services and for temporary legal custody of J.L.M. and J.M.M. Following a February 12, 2014 hearing, the District Court adjudicated J.L.M. and J.M.M. youths in need of care and granted the Department temporary legal custody. At this time, the District Court also approved a plan for reunification of Father with J.M.

¶6 On April 15, 2014, the Department filed a petition to terminate Father's parental rights to all three children. A hearing was held on May 28, May 30, and June 11, 2014. The District Court terminated Father's parental rights on July 7, 2014.

¶7 Father appeals, claiming that the District Court abused its discretion. He contends the District Court should not have decided that the Department provided reasonable efforts to prevent removal of the children from their home. He bases this argument on the contention that there were less drastic alternatives available to the Department besides removal. While Father is correct when he notes that the Department is statutorily required to "make reasonable efforts to prevent the necessity of removal of a child from the child's home," this does not mean that the Department is required to treat removal as a remedy of last resort. *See* § 41-3-423, MCA. Rather, it must merely take "reasonable" efforts to prevent removal, bearing in mind that "the child's health and safety are of paramount concern" in implementing the laws related to child abuse and neglect. Sections 41-3-101(7) and -423(1), MCA. In its order, the District Court listed ten resources the Department provided to Father before petitioning for termination of his parental rights. In light of these resources the Department provided, the District Court

3

did not abuse its discretion when it concluded that the Department provided reasonable efforts to reunify the family. *See In re B.N.Y.*, 2006 MT 34, ¶ 25, 331 Mont. 145, 130 P.3d 594 (where the Department made similar efforts and we found that they were "reasonable"). The District Court's order terminating Father's parental rights is affirmed.

¶8 For this reason, we do not consider Father's additional argument that the District Court should not have extended the Department's temporary legal custody over J.M. Reversing the order extending temporary legal custody would have no practical effect. Father's parental rights would remain terminated, regardless of any decision on this issue.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE